IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT COURT OF ARKANSAS
PINE BLUFF DIVISION

MICHAEL CAMPBELL                                                    **PLAINTIFF**

v.                                       Case No:   5:14-CV-437-JM

UNION PACIFIC RAILROAD COMPANY                                **DEFENDANT**

BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.      Introduction

Plaintiff, Michael Campbell (hereinafter "Plaintiff") has sued his employer, Union Pacific

Railroad Company ("UP" or "Union Pacific") under the Federal Employers' Liability Act

("FELA"), 45 U.S.C. § 1 *et seq.* Specifically, Plaintiff alleges he injured himself while working as

a conductor on August 10, 2013, shoving a train into the Butterfield Yard, near Malvern, Arkansas.

*See* Pl.'s Complaint, Case No. 5:14-CV-437-JM, Doc. 1 at ¶ 8. Plaintiff alleges he was thrown

from the car on which he was riding when the train came to a sudden stop, injuring his neck and

shoulder. *See id.*

Among his many claims, Plaintiff alleges that Union Pacific: (1) violated the Safety

Appliance Act (SAA), 49 U.S.C. § 20301 *et seq.*, by failing to have secure sill steps and grab irons;

(2) interfered with his medical treatment on the day of the alleged incident; (3) conducted shoving

operations with an inadequate radio, contrary to 49 C.F.R. § 220.49; (4) negligently assigned him

to perform duties it knew, or should have known, would injure him; and (5) failed to provide him

with personal protective equipment. *See id.* at ¶¶ 9, 10-11, 15-17, 20-25, 27 (d), (h)-(j), (k).

Plaintiff further alleges that he suffered injuries that have permanently compromised his ability to

work in the future. *Id.* at ¶¶ 31, 19, 26.   Thus, he is seeking to recover future medical expenses and

future lost wages, including fringe benefits, as damages. *Id.* at ¶¶ 19, 26, 30.

As discussed below, UP is entitled to summary judgment on each of these claims. Plaintiff has no evidence that UP violated the SAA, interfered with his medical treatment, provided him with a defective radio, or that the personal protective equipment caused his accident or injuries in the slightest. There is also no evidence that Plaintiff will require future medical treatment or that he will not be able to work in the future. In fact, Plaintiff has returned to work with UP and by his own admission intends to continue working until the age of 70. Furthermore, Plaintiff's negligent assignment claim must fail because he has proffered no proof that Union Pacific knew of a pre-existing condition that would be exacerbated by his duties as a conductor.

Additionally, UP anticipates that Plaintiff may attempt to make an excessive speed claim and claim injuries other than those to his neck and shoulder. The Court should dismiss both of these claims and prohibit Plaintiff from introducing related evidence at trial. As to the speed claim, Plaintiff did not plead it. Notwithstanding, there is no evidence that the train was traveling in excess of the 10 mph speed limit that applies to Class I track pursuant to Federal Railroad Administration (FRA) regulations, thereby preempting Plaintiff's claim. Any suggestion that the train exceeded an internally posted speed limit is not only irrelevant but has been overwhelmingly rejected by other courts. As to any other injury Plaintiff may claim, Plaintiff testified in his deposition that he was only claiming injuries to his neck and shoulder; thus, the Court should limit him to arguing and introducing evidence on those alleged injuries only.

## II.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 (b) permits a defending party to move for a summary judgment on all or part of the claim.   Federal Rule of Civil Procedure 56 (c)(2) provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

As the party moving for summary judgment, Union Pacific bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, then the burden shifts to the non-moving party to demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, when the movant has made a properly supported motion, the non-movant's response must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The mere existence of an alleged factual dispute will not defeat a properly supported motion for summary judgment. Rather, the alleged disputed fact must be "outcome determinative" under applicable law. *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989); *Twin City Bank v. Verex Assurance Inc.*, 733 F. Supp. 67, 67-68 (E.D. Ark. 1990).

### III.   Argument

**A.   UP is entitled to summary judgment on the claim that the locomotive was traveling at an excessive speed.**

Plaintiff has not pled excessive speed in his Complaint. *See* Pl.'s Complaint, Case No. 5:14-CV-437-JM, Doc. 1. Further, Plaintiff's expert, Charles Culver, made no mention of an excessive speed argument in his expert report. *See* Ex. 1, Dep. Culver at 50, 146.   Yet, both Mr. Culver and Plaintiff testified at their respective depositions that Engineer Kyle Crain was exceeding the posted speed limit of 5 mph at the time of the incident. *See* Ex. 1, Dep. Culver at 50, 146, 161-162; Ex. 4, Dep. Campbell at 169. Culver offered this opinion for the first time during his deposition, long after the deadline for disclosing expert opinions.   *See* Ex. 1, Dep. Culver at 50, 159-160. Mr. Culver confirmed that the Arkansas Midland Railroad, who owned the yard where the incident occurred, had enacted an internal speed restriction of 5 mph.   *See* Ex. 1, Dep. Culver at 146-147.   He confirmed, however, that the 5 mph speed restriction was not the Federal Railroad Administration ("FRA") speed limit for the area of the incident.   *See* Ex. 1, Dep. Culver at 146-147.

The train was traveling between 2 and 7 mph at the time of this incident.   *See* Ex. 2, Affidavit of William E. Hill.   Plaintiff's expert, Charles Culver, testified that the train was traveling about 7 to 8 mph, as did Plaintiff. *See* Ex. 1, Dep. Culver at 146-147; Ex. 4, Dep. Campbell at 82.   At no time during the shoving movement during which Plaintiff claims he was injured did the train exceed 7 mph.   *See* Ex. 2, Affidavit of William E. Hill.   Because the tracks at issue are maintained to Class I track standards as prescribed by the FRA, the track speed limit is 10 mph. *See* 49 C.F.R. § 213.9 (a); Ex. 3, Affidavit of Terry Hardage. Therefore, any claim that the

train was speeding or otherwise exceeded the speed limit is preempted by federal law, and all such evidence should be excluded at trial.

### (1)    The excessive speed claim is preempted by federal law.

Federal preemption of claims alleging excessive speed is based upon 49 U.S.C. § 20106, which authorizes the Secretary of Transportation to adopt uniform standards for railroad safety and limits the states' rights to regulate the same subject matter. Maximum train speeds are set forth in the FRA regulations at 49 CFR § 213.9(a). In *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 675 (1993) ("*Easterwood*"), the Supreme Court held that 49 CFR § 213.9(a) "cover[s] the subject matter of train speed with respect to track conditions . . . ." *See also Bradford v. Union Pac. R.R. Co.*, 491 F. Supp. 2d 831, 839 (W.D. Ark. 2007) (holding that federal law preempted an excessive speed claim); *Stevenson v. Union Pac. R.R. Co.*, 110 F. Supp. 2d 1086, 1088 (E.D. Ark. 2000) ("*Stevenson*") (same); *Dallari v. S. Pac. R.R.*, 923 F. Supp. 1139, 1140 (E.D. Ark. 1996) (same); and *Cartwright v. Burlington N. R.R. Co.*, 908 F. Supp. 662, 666 (E.D. Ark. 1995) (same).

Plaintiff is attempting to raise an excessive speed claim by alleging the train was going faster than an internal speed restriction of 5 mph.   The maximum allowable speed at this location, however, was 10 mph pursuant to 49 CFR § 213.9(a).   Union Pacific denies that the train was required to travel less than the maximum speed of 10 mph permitted by 49 CFR § 213.9(a).

The affidavit of Terry Hardage establishes that the track at the Butterfield Yard, the location of Plaintiff's alleged incident, was properly classified as Class I on the day of the accident. *See* Ex. 3, Affidavit of Terry Hardage.   The maximum speed on Class I track is 10 mph.   49 CFR § 213.9(a).   The evidence establishes that the train was traveling less than 10 mph during the entire shoving movement during which Plaintiff alleges he was injured.   *See* Ex. 2, Affidavit of William E. Hill; Ex. 1, Dep. Culver at 146-147; Ex. 4, Dep. Campbell at 82. Therefore, since any

claim that the train was speeding has no evidentiary support, there is no genuine issue of fact, and any claim of excessive speed should be dismissed. Further, all evidence of speeding, the excessive speed claim, that the locomotive was going to too fast, or that there was an internal speed restriction of 5 mph should be excluded.

> **(2)     Internal speed rules are irrelevant.**

Plaintiff and his expert testified that UP was violating an internal speed restriction of 5 mph. *See* Ex. 1, Dep. Culver at 146; Ex. 4, Dep. Campbell at 169. Whether Union Pacific was traveling in excess of internal rules is irrelevant.   Plaintiff cannot claim, or introduce evidence, that Defendant's train should have been going slower than the maximum federal speed limit for these tracks, which is 10 mph.   Courts across the country have dismissed these claims.   The following is a sample of pre-2007 Federal Railroad Safety Act ("FRSA") amendment cases in which a plaintiff's claim that a railroad was exceeding an internal speed limit was dismissed:

- *Hesling v. CSX Transp. Co. Inc.*, 396 F.3d 632, 641 (5th Cir. 2005) (holding that the FRSA preempted the plaintiff's claim that a passenger train violated the railroad's self-imposed speed limit of 45 mph by traveling 61 mph, where federal regulation allowed passenger trains to travel at a speed of 80 mph on such tracks).

- *Michael v. Norfolk S. Ry. Co.*, 74 F.3d 271, 273 (11th Cir. 1996) (holding that 49 C.F.R. § 213.9 sets the speed limits for different types of tracks and trains and those limits are not affected by a railroad's internal rules).

- *St. Louis Sw. Ry. v. Pierce*, 68 F.3d 276, 278 (8th Cir. 1995) (stating that even though the railroad was exceeding its internal timetable speed, the plaintiff's excessive speed claim was still preempted).

–6–

- *Seyler v. Burlington N. Santa Fe Corp.*, 102 F. Supp. 2d 1226, 1235 (D. Kan. 2000) ("Claims based on a railroad's failure to obey a self-imposed speed limit are preempted by FRSA.").

- *Rice v. Cincinnati, New Orleans & Pac. Ry. Co.*, 955 F. Supp. 739, 740 (E.D. Ky. 1997) (claim that railroad was traveling in excess of internal speed restriction was preempted because train was not exceeding maximum speed set forth in 49 C.F.R. § 213.9).

- *Wright v. Ill. Cent. R. Co.*, 868 F. Supp. 183, 187 (S.D. Miss. 1994) (rejecting argument that preemption does not apply because railroad violated internal policies setting lower speed).

- *Bowman v. Norfolk S. Ry.*, 832 F. Supp. 1014, 1017 (D.S.C. 1993) (stating that "[b]ecause this court determines that state law regarding train speed is pre-empted, evidence of the defendant's internal policies about train speed is irrelevant.").

- *Rennick v. Norfolk and W. Ry. Co.*, 721 N.E.2d 1287, 1290 (Ind. Ct. App. 2000) ("because the train's speed was in compliance with the federally prescribed speed limit at the time of the accident, the estate's claim of [railroad] negligence based upon excessive speed under a [internal railroad] timetable must fail as a matter of law.").

- *Mott v. Mo. Pac. R. Co.*, 926 S.W.2d 81, 84-85 (Mo. App. 1996) ("The railroad's alleged violation of a self-imposed speed limit should not have been submitted to the jury.").

- *Hightower v. Kansas City S. Ry. Co.*, 70 P.3d 835, 846-49 (Okla. 2003) (excessive speed claim preempted where train operated within FRA limits, even though the train may have been operating above an internal speed limit).

The 2007 amendment to the FRSA has had no impact on federal preemption of excessive speed claims.   In fact, the following post-2007 FRSA amendment cases have rejected such arguments and held excessive speed claims are preempted even if the railroad is violating an internal speed limit:

- *Veit v. Burlington N. Santa Fe Corp.*, 249 P.3d 607, at ¶¶ 43, 59 (Wash. 2011) (the railroad's internal speed rules do not affect preemption).

- *Whalen v. Norfolk S.*, No. 2008-CA-000296-MR, 2010 WL 1404409, at *3 (Ky. App. Apr. 9, 2010) ("any issue regarding Norfolk's violation of its own internal speed regulations is irrelevant.").

- *Melton v. BNSF Ry. Co.*, 322 S.W.3d 174, 191 (Tenn. App. 2010) ("for purposes of preemption, internal regulations are irrelevant"), *review denied*, (Tenn. Aug. 25, 2010).

- *Rubietta v. Nat'l R.R. Passenger Corp.*, No. 08 C 7117, 2012 WL 345909, at *3 (N.D. Ill. Jan. 30, 2012) (stating that speed claims are preempted "even if the speed exceeded the railroad's internal policy.").

- *Murrell v. Union Pac. R.R.*, 544 F. Supp. 2d 1138, 1149-50 (D. Or. 2008) (applying the 2007 Clarification Amendment, court holds that excessive speed claim alleging violation of timetable limit is preempted).

- *Rasmusen v. White*, No. 10 C 6171, 2013 WL 4959292, (N.D. Ill Sept. 12, 2012) ("This Court agrees that the federal speed limit of 80 mph preempts the railway's internal speed limit of 79 mph.").

Based on the case law above, it is clear that any claim that UP was speeding in violation of an internal speed restriction is preempted by the FRSA.   For these reasons, all such claims should be dismissed and all such evidence should not be allowed at trial.

### B.   Plaintiff's negligent assignment claim should be dismissed because there is no evidence that UP knew or should have known that he had a pre-existing condition that would be exacerbated by his duties.

In paragraphs 27 (h), 27 (i), and 27 (j), Plaintiff alleges that UP negligently assigned him to perform duties that it knew, or in the exercise of reasonable care, should have known would result in injury to him.  *See* Pl.'s Complaint, Case No. 5:14-CV-437-JM, Doc. 1.   Plaintiff has failed to produce evidence necessary to meet his burden of proof on this claim.   Therefore, the Court should dismiss Plaintiff's negligent assignment claim.

In *Fletcher v. Union Pacific R.R._Co.*, 621 F.2d 902 (8th Cir.1980), the court held that a prima facie case of negligent assignment requires a showing that the defendant knew or should have known its assignment exposed the employee to an unreasonable risk of harm.  *Id.* at 909. The court was swayed by evidence that despite a doctor's restrictions to less strenuous work, the railroad did not follow the restrictions and continued to assign the plaintiff to the same work.  *Id.* at 908.   Thus, the relevant question in this case is whether UP knew or should have known that Plaintiff had a pre-existing condition and whether such condition was going to be worsened by his assigned work duties.

Plaintiff testified that the only conditions for which he was suing Union Pacific were his neck and left shoulder conditions.  *See* Ex. 4, Dep. Campbell at 37-38.   Plaintiff also testified that

he never recalls having had any neck or left shoulder symptoms prior to the incident which is the subject of this lawsuit.   Ex. 4, Dep. Campbell at 38.   When asked whether he had ever been given any work restrictions from a doctor, except for the time he was off after this incident, Plaintiff could not remember.   Ex. 4, Dep. Campbell at 177-178.

Plaintiff has provided no evidence that he had neck or left shoulder symptoms prior to this incident, much less that he reported a neck or left shoulder condition to UP prior to the incident. Given these facts, Plaintiff cannot make a prima facie case necessary for a negligent assignment claim because he cannot show that UP knew, or should have known, that he was not physically able to perform the task to which he was assigned and that such task would have caused injury. For these reasons, Plaintiff's negligent assignment claim should be dismissed.

**C.      Plaintiff's claim that UP violated 49 CFR §220.49 should be dismissed because there is no evidence that his radio was defective.**

In paragraph 22 of his Complaint, Plaintiff alleges that Union Pacific violated 49 CFR §220.49 because Plaintiff's radio was allegedly defective. *See* Pl.'s Complaint, Case No. 5:14-CV-437-JM, Doc. 1. Plaintiff, however, has provided no credible evidence that the radio which he was using at the time of the incident was defective.

On the day of the incident, Plaintiff stated in his accident report that the radio he was using was not defective. *See* Ex. 4, Dep. Campbell at 113-114; Ex. 5, Report of Personal Injury. Further, Plaintiff continued using his assigned radio, which was the same one he was using at the time of the incident, for twenty months after the incident, when it was taken from him so that it could be tested. *See* Ex. 4, Dep. Campbell at 158, 171.   Union Pacific's Rules require Plaintiff to inspect his equipment and report defects before using such equipment. *See* Ex. 6, UP GCOR 1.1.4.   Plaintiff admitted that he never reported his radio as defective to anyone at any time. *See*

Ex. 4, Dep. Campbell at 171.   Laboratory and field testing showed that there were no defects with Plaintiff's radio. *See* Ex. 9, Report of Dan Yates; Ex. 7, Affidavit of Danny Yates.

When asked why he thought his radio was defective, Plaintiff stated that he did not think that Engineer Crain heard Plaintiff's radio transmissions, but that he did not know.  *See* Ex. 4, Dep. Campbell at 170.   Plaintiff has no foundation to testify as to what Engineer Crain did or did not hear on the radio.   In fact, Engineer Crain confirmed that he heard every one of Plaintiff's radio transmissions loud and clear and that immediately after the incident, he and Plaintiff discussed the commands that were given.   *See* Ex. 8, Dep. Crain at 63-65.

Plaintiff has no evidence that the radio was defective at the time of the incident.   Further, Plaintiff has failed to rebut the testing and testimony of Danny Yates, which establishes that there were no defects with the radio.   For these reasons, Plaintiff's allegation that Union Pacific violated 49 CFR §220.49 should be dismissed.

**D.   Plaintiff's SAA claim should be dismissed because there is no evidence that the sill steps, grab irons, or handholds were defective.**

The FELA encompasses claims not predicated on a railroad's negligence, including those alleging violations of the SAA. *Beimert v. Burlington N., Inc.*, 726 F.2d 412, 414 (8th Cir. 1984) ("The FELA 'embraces claims of an employee based on violations of the Safety Appliance Act.'") (quoting *Crane v. Cedar Rapids & I.C. Ry.*, 395 U.S. 164 (1969)). The SAA prohibits a railroad carrier from using any vehicle on its lines unless that vehicle is equipped with "secure sill steps . . ." and "secure grab irons or handholds on its ends and sides for greater security to individuals in coupling and uncoupling vehicles." 49 U.S.C. § 20302 (a)(1)(B)-(a)(2). To succeed on an SAA claim, a plaintiff must establish a statutory violation rather than negligence by the defendant

railroad. *Womack v. Union Pac. R.R. Co.*, No. 4:09-CV-04116, 2012 U.S. Dist. LEXIS 40575, at
*5 (W.D. Ark. Mar. 26, 2012) (citing *Crane*, 395 U.S. at 166).

Here, Plaintiff cannot establish a violation of the SAA; he has no evidence that the sill
steps, handholds, or grab irons were defective at the time of the alleged incident. To the contrary,
the evidence establishes that each was in working order. Jason Culp, Director of Mechanical
Maintenance at Union Pacific, inspected the railcar at issue the day after Plaintiff's incident. *See*
Ex. 10, Affidavit of Jason Culp. His inspection revealed that the sill steps were "standard 19 [in.]
wide" and that the handholds were standard to that type of rail car. Ex. 10, Affidavit of Jason Culp;
*see also* Ex. 1 attached to Affidavit of Jason Culp. He found no defects with the railcar overall. Ex.
10, Affidavit of Jason Culp. Plaintiff has no evidence to rebut the testimony and testing of Jason
Culp.

In addition, on the date of the accident, Plaintiff completed a form entitled, "Report of
Personal Injury or Occupational Illness." *See* Ex. 5, Report of Personal Injury. Section three,
question three asked if equipment or tools caused or contributed to the cause of the accident/injury.
Ex. 5, Report of Personal Injury. Plaintiff answered in the negative, checking the "no" box for that
section. Ex. 5, Report of Personal Injury. Moreover, Plaintiff admitted in his deposition that the car
he was riding at the time of the incident did not have any defects:

> Q:   Okay. So as far as you know, there were no defects to
>       the car you were riding; correct?
>
> A:   That's correct.

Ex. 4, Dep. Campbell at 109; *see also id.* at 113.

Due to the foregoing lack of evidence that any defect existed with the railcar on which
Plaintiff was riding, any claim that Union Pacific violated the SAA should be dismissed.

E.   **Plaintiff's claim that UP interfered with his medical treatment should be dismissed due to a lack of evidence and a lack of claimed damages.**

Plaintiff's Complaint also alleges that after the incident at issue, "Union Pacific interfered with [his] treatment and had him discharged without proper treatment." Pl.'s Complaint, Case No. 5:14-CV-437-JM, Doc. 1 at ¶ 9.   In particular, he alleges that hospital emergency room staff conferred with Union Pacific personnel and a doctor associated with Union Pacific, and thereafter he received no treatment and was released, even though his blood sugar level was high due to his diabetes. *See id.* According to Plaintiff, the emergency room just "pushed [him] out the door" after UP arrived at the hospital. Ex. 4, Dep. Campbell at 124. Plaintiff's manager, Greg Rosales ("Rosales"), went to the hospital following the incident at issue. Ex. 4, Dep. Campbell at 103-104. This claim should be dismissed for two reasons.

First, Plaintiff has no evidence and no witnesses to support it. In his deposition, Plaintiff acknowledged that he did not hear Rosales say anything to the emergency room doctor and that he did not hear any conversations between Union Pacific employees and hospital emergency room staff. Ex. 4, Dep. Campbell at 104, 124-125. Plaintiff only spoke to Rosales in the hospital waiting room, where he filled out an incident report form. Ex. 4, Dep. Campbell at 104-105. Furthermore, Plaintiff testified that while he was at the hospital, he did not have any symptoms from his high sugar level and he did not discuss it with any hospital staff.   Ex. 4, Dep. Campbell at 122-123. He only learned of his high blood sugar after his discharge because it was in his medical records. *See* Ex. 4, Dep. Campbell at 123. In short, Plaintiff has no proof of any interference with his medical care that day.

Second, even assuming Plaintiff could establish that some sort of interference occurred, he sustained no damages as a result. When asked pointedly in his deposition if he suffered any

damages or injuries as a result of the alleged failure to treat his high sugar level, Plaintiff did not cite, specify, or state a single one in response. *See* Ex. 4, Dep. Campbell at 124-25.

Thus, to the extent this is a cognizable claim, Plaintiff cannot meet his burden of proof under the FELA. He has offered no evidence and no witnesses to support the allegation. Moreover, even assuming he could prove interference, Plaintiff has not demonstrated any damages that he suffered as a result.

**F.    Plaintiff's claim for future medical treatment and expenses should be dismissed for lack of evidence.**

Plaintiff's Complaint also makes a claim for future medical treatment and related expenses. Pl.'s Complaint, Case No. 5:14-CV-437-JM, Doc. 1 at ¶¶ 29-30.   However, Plaintiff has no evidence that he will need future care. After the incident at issue, Plaintiff sought treatment for his shoulder from orthopedic surgeon, Dr. John Lytle. On January 14, 2014, Plaintiff was seen by Dr. Lytle for a seven-week post-operative checkup. Ex. 11 at 1. That record states: "He [Plaintiff] is significantly improved. His strength is improving and he volunteers that he is ready to return to work." Ex. 11 at 1. Dr. Lytle's record further states: "He will return to work full active duty on Monday 1/20/14. . . . I expect this to have no minimal or no long-term impairment." Ex. 11 at 2.

Plaintiff returned to Dr. Lytle on June 5, 2014. *See* Ex. 12 at 1. Upon examining Plaintiff, Dr. Lytle noted: "He has no pain. He has been back to work since Feb and is doing very well." Ex. 12 at 2.   As a result of the visit, Dr. Lytle concluded that, "According to the 'Guides to Evaluation for Permanent Impairment,' 4th edition, as published by the American Medical Association, I see no long-term impairment to the L shoulder as it exists at this time." Ex. 12 at 2. As to work, Dr. Lytle's record states, "He is already working with the railroad and may continue to do so." Ex. 12

–14–

at 2. Since Dr. Lytle released Plaintiff from his care, he has not returned and has not seen any other

doctor related to his shoulder. Ex. 4, Dep. Campbell at 148.

     With regard to Plaintiff's neck, the only evidence that Plaintiff may need future treatment

is Plaintiff's own testimony that Dr. Thomas Hart, of Pain Consultants of Arkansas, told him that *if*

he suffers a herniated disc in the future, he may need surgery:

> Q:    So Dr. Hart has said you could get a herniated disk at some
> point in the future?
>
> A:    He said it could happen. It might not happen.

Ex. 4, Dep. Campbell at 149.

     This is insufficient; there must be some showing based on a "degree of medical certainty"

that future care will be needed. *See West Union v. Vostatek*, 302 Ark. 219, at 222, 788 S.W.2d 952,

954 (1990); *see also* AMI 2204, "Measure of Damages—Medical Expense—Past and Future."

Here, there is no evidence that future surgery or treatment will be necessary. Thus, other than his

own testimony, Plaintiff has no evidence that he will incur future medical expenses and this claim

should be dismissed.

### G.    Plaintiff has no evidence to support his claims of future wage losses and loss of fringe benefits, thus warranting their dismissal.

     Plaintiff's claims that his ability to work has been impaired and that he will suffer wage

losses in the future should be dismissed for similar reasons – namely, there is no evidence to

support such a claim. *See* Pl.'s Complaint, Case No. 5:14-CV-437-JM, Doc. 1 at ¶¶ 30-31.

Plaintiff returned to work at Union Pacific in February 2014. Ex. 4, Dep. Campbell at 145.

Shortly after returning to work, Plaintiff voluntarily switched from his job as a thru-freight

conductor to a brakeman on a local. Ex. 4, Dep. Campbell at 145-146, 180-181. Plaintiff's position

on the local actually required more physical labor than his previous position. Ex. 4, Dep. Campbell

at 146-47, 181-82.   After working a year on the local, Plaintiff got bumped back to work on a thru-freight. Ex. 4, Dep. Campbell at 181. No doctor has restricted his work activities. Ex. 4, Dep. Campbell at 147.

Furthermore, in his deposition, Plaintiff testified that he is able to perform his work at Union Pacific safely. Ex. 4, Dep. Campbell at 147. In fact, Plaintiff testified that he plans to work at Union Pacific until he is eligible for full retirement benefits:

> Q:     Will you have a full 30 years in by the time you reach 60?
>
> A:     No, sir.
>
> Q:     Okay. When will you have your full 30 in?
>
> A:     I'll have my full 30 in around 62, 63, but I could work until 70.
>
> Q:     Okay. So do you think you will work until 70; is that your plan?
>
> A:     That's my plan, yeah.

Ex. 4, Dep. Campbell at 176-177.

By Plaintiff's own admission, he plans to work well into the future. Given this admission and the foregoing, Plaintiff's claim that he cannot work and that he will suffer wage losses and fringe benefits in the future should be dismissed.

### H.     Claims that Plaintiff suffered injuries other than those to his neck or shoulder should be prohibited.

To the extent that Plaintiff intends to make a claim that he suffered injuries other than those to his left shoulder neck, the Court should not permit him to do so. As mentioned previously, in his deposition, Plaintiff was pointedly asked what injuries he claimed as a result of the August 2013 incident. Ex. 4, Dep. Campbell at 37-38. He testified that he was claiming injuries to his shoulder

and neck only. Ex. 4, Dep. Campbell at 38. Thus, even though Plaintiff alleged in his Complaint that he suffered injuries to his back and to his mental and psychological health, his own deposition testimony should preclude any arguments or evidence of these alleged injuries. Moreover, there is no evidence to support a claim for any injuries, conditions, or symptoms. As a result, Plaintiff should be prohibited from arguing or introducing evidence at trial as to any injuries other than the alleged injuries to his left shoulder and neck.

**I.      UP is entitled to summary judgment on Plaintiff's claim that it failed to provide him with personal protective equipment.**

Finally, Plaintiff argues that UP "failed to furnish [him] with reasonably necessary and proper personal protective equipment." Pl.'s Complaint, Case No. 5:14-CV-437-JM, Doc. 1 at ¶ 27(d). Personal protective equipment ("PPE") consists of hearing protection devices, gloves, hard hats, certain glasses and footwear. *See* Ex. 13, UP GCOR 71.0.   Plaintiff claims that he fell from the moving car onto his back, injuring his neck and shoulder. *See* Ex. 4, Dep. Campbell at 38, 90. He has no proof that any of the aforementioned PPE caused or contributed to the accident or his alleged injuries in any way. In other words, even if Plaintiff had been wearing all of the PPE, there is nothing to suggest that the accident would have been prevented or that his claimed injuries would have been avoided. Because there is no proof that the PPE caused, in whole or in part, Plaintiff's accident or injuries, this claim should be dismissed, and the Court should prohibit Plaintiff from offering or introducing any evidence related to PPE at trial.

**IV.      Conclusion**

For the foregoing reasons, Union Pacific's motion for partial summary judgment should be granted.

Respectfully submitted,

Joseph P. McKay, #99006
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas  72201-3522
Telephone:   (501) 376-2011
Facsimile:   (501) 376-2147
Email:   jmckay@fridayfirm.com


*/s/ Joseph P. McKay*
JOSEPH P. MCKAY


## CERTIFICATE OF SERVICE

I, Joseph P. McKay, hereby certify that a true and correct copy of the foregoing pleading has been filed using the CM/ECF system on this 16th day of December, 2015 and the clerk of the court will forward a copy to the following:

Chester H. Lauck, III, Esq.
chet@laucklaw.com


*/s/ Joseph P. McKay*
JOSEPH P. MCKAY